Michael A. Jones, State Bar #27311
Cody D. Vandewerker, State Bar #33385
David B. Nelson, State Bar #34100
**ALLEN BARNES & JONES, PLC**
1850 N. Central Ave., Suite 1150
Phoenix, Arizona 85004
Ofc: (602) 256-6000
Fax: (602) 252-4712
Email:  mjones@allenbarneslaw.com
        cvandewerker@allenbarneslaw.com
        dnelson@allenbarneslaw.com

Attorneys for Nussbaum Gillis & Dinner, P.C.,
Alleged Debtor

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| In re: | Involuntary Chapter 7 |
|---|---|
| NUSSBAUM, GILLIS & DINNER, P.C., | Case No. 2:19-bk-13061-PS |
| Alleged Debtor. | **NUSSBAUM, GILLIS & DINNER, P.C.'S MOTION TO DISMISS THE INVOLUNTARY BANKRUPTCY PETITION** |

Nussbaum Gillis & Dinner, P.C. ("**Alleged Debtor**") hereby moves the Court to dismiss the Involuntary Bankruptcy Petition and this case initiated by Scottsdale-Kierland IV, LLC ("**Petitioner**").  No other party has joined the Petitioner or even asserted an unpaid payment from Alleged Debtor.  Petitioner has not established any justification for bankruptcy intervention.  Instead, Petitioner seeks the extraordinary relief of this involuntary bankruptcy proceeding as an improper means of collection, and for use in harassing Alleged Debtor and its principals.  This also appears to be a forum shopping effort for Petitioner to move from the State Court that has labeled Petitioner's legal tactics as overly excessive and aggressive.   Upon review of the undisputed facts in this matter, this is a two-party dispute (Petitioner is the only creditor other than the Alleged Debtors' shareholders/principals), Petitioner has collection remedies available to it in the State Court, Petitioner is improperly attempting to use this Court as the collection mechanism for its judgment, and this case should be dismissed.  The following Memorandum of Points and Authorities supports this Motion.

/ / /

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTUAL BACKGROUND.

1. In March 2011, Alleged Debtor entered into an eleven-year Lease ("**Lease**") with Petitioner for a 11,145 square foot suite ("**Suite**") in a Class A building located at 14850 N. Scottsdale Road, Scottsdale, Arizona 85254. The Lease term commenced on September 1, 2011 and expired on August 31, 2022, unless terminated earlier.

2. Alleged Debtors' principals did not personally guarantee amounts owing under the Lease.

3. The Suite was a shell space prior to Alleged Debtor's arrival. Alleged Debtor invested close to $300,000 of its own money for additional upgrades to create a client friendly, attractive space applicable to any professional tenant. After the upgrades, Petitioner asked Alleged Debtor to use the space in promotional materials and often showcased the Suite to lenders and other tenants.

4. In early 2017, Alleged Debtor began exploring assignment or sublease options for the Suite due to its anticipated departure. During meetings with Petitioner, Petitioner's property manager ("**Property Manager**") represented that procuring a tenant for the Suite would be very easy.

5. Alleged Debtor paid all rent due through June 30, 2017. Alleged Debtor vacated the Suite in early July 2017.

6. Based in part on Petitioner's real estate broker ("**Broker**") representing a furnished Suite would assist in procuring potential tenants, Alleged Debtor offered to turn over its turnkey operation with hundreds of thousands of dollars of improvements, including custom furniture, to a new tenant without charge. In the event a future tenant did not want a furnished Suite, Alleged Debtor offered to remove the furniture at its own cost, liquidate it and split the proceeds with Petitioner. Despite such discussions occurring far in advance of Alleged Debtor vacating the Suite, at the time of vacating the Suite, the Property Manager ultimately required Alleged Debtor to remove all furniture with few days' notices and at great expense to Alleged Debtor.

7.      Despite Broker initially estimating time to sublease the Suite to be three to six months, Petitioner did not seriously market the Suite until late July 2017.  After July 2017, Petitioner failed to market the Suite properly, including without limitation, leaving Alleged Debtor's signage up until January 2018, refusing to follow up leads with interested attorneys and law firms recommended by Alleged Debtor, ignoring the Broker's original recommendation to pursue a demising plan, and raising the requested rent per square foot rate by 16.7% over Alleged Debtor's contractual rate.  When it did obtain a new tenant, Petitioner granted tenant an exorbitant rent credit of $515,000 and backloaded the lease so the rent recovery in the remaining lease term was diminished.

8.      Despite the Alleged Debtor vacating and surrendering the Suite in early July 2017, Petitioner initiated a forcible detainer proceeding against Alleged Debtor.  And, Petitioner initiated costly and drawn-out civil litigation case in Arizona Superior Court ("**State Court**"), Case No. CV2017-012245 ("**State Court Case**").

9.      Petitioner eventually obtained a judgment ("**Judgment**") against Alleged Debtor for Lease damages of $1,769,277.90.  *See* Judgment attached as **Exhibit A**.  Yet, the State Court Judge noted in a written ruling regarding Petitioner's attorneys' fee award ("**Fee Ruling**") that he was "still perplexed why [Petitioner] pursued this case at all."  *See* Fee Ruling, attached as **Exhibit B** at p.1.  In response to Petitioner seeking $562,000 in attorneys' fees, when Alleged Debtor admitted liability, the State Court Judge made the following findings regarding Petitioner's litigation strategy:

> "$562,000 [in attorneys' fees] is simply a patently unreasonable amount. . . . It is literally multiple of what was reasonable."

> "There was nothing complicated about this case at all.  It was about as straight forward a case as you can possible have.  Yet, this case was litigated like a complex commercial dispute, with extensive discovery and complicated legal issues."

> "The effort that apparently went into this case had no relationship whatsoever to what was reasonably necessary to accomplish the requite goals."

> "[Petitioner] was clearly a willing participant in overzealous approach to this case."

"It is hard to imagine a case more simple than this one. How [Petitioner] managed to rack up over $550,000 in fees is a complete mystery."

Fee Ruling at pp. 1-2.

10.     The alleged Debtor's only remaining asset is its accounts receivable. In compliance with the State Court's orders and E.R. 1.6(a), Alleged Debtor cannot turnover information related to the representation of its former clients, including client identities. *See* State Court Minute Entry Orders, attached as **Exhibit C**. Despite this limitation, the Alleged Debtor has offered numerous methods to collect and turnover to Petitioner of all its accounts receivable (less costs associated with protecting client files and information), however, Petitioner has consistently refused and demanded that Alleged Debtor reveal client identities and other confidential information.

11.     Prior to the Petition Date, Petitioner pursued collection actions including garnishment proceedings, however, it never sought appointment of a receiver against Alleged Debtor.

12.     Dissatisfied with the State Court's rulings regarding client confidentiality and accounts receivable, on October 11, 2019, ("**Petition Date**") Petitioner filed the Involuntary Chapter 7 Petition against Alleged Debtor stating that the Alleged Debtor was generally not paying its debts as they become due, thereby initiating this case as the sole petitioner. *See* ECF No. 1. Petitioner is the sole petitioning creditor in this case.

13.     Beyond the Petitioner (and Alleged Debtors' shareholders/principals), Alleged Debtor does not have any other creditors, and no parties have joined in the Involuntary Petition.

## I.     LEGAL ANALYSIS

### A.     Involuntary Case was Improperly Filed

The Court should dismiss the Involuntary Petition and this case because Petitioner cannot fulfill substantive requirements for an involuntary order for relief. A bankruptcy court can enter an order for relief in an involuntary case if the debtor "is generally not paying such debtor's debts as such debts come due." 11 U.S.C. § 303(h)(1). "The petitioning creditors have the burden of proving . . . that the debtor is generally not paying its bills on time." *In re TPG*

*Troy, LLC*, 492 B.R. 150, 161 (Bankr. S.D.N.Y. 2013) (quotations omitted). The Ninth Circuit applies a "totality of the circumstances test" looking at "the number of unpaid claims, the amount of the unpaid claims, the materiality of the nonpayments, and the debtor's overall conduct of its financial affairs." *In re EB Holdings II, Inc.*, 589 B.R. 704, 722 (Bankr. D. Nev. 2017).

Missed payments **to a sole creditor** can qualify as "generally not paying" debts only under "(1) an exceptional case of a debtor with a sole creditor who would otherwise be without an adequate remedy under State or Federal law (other than bankruptcy law) if denied an order for relief or (2) a showing of special circumstances amounting to fraud, trick, artifice or scam." *7H Land & Cattle Corp.*, 6 B.R. 29, 31, 34 (Bankr. D. Nev. 1980) ("It may be assumed that in the ordinary case there can be no order for relief with no more proof than mere failure to meet liability to a single creditor.") (emphasis added). "An exception to the rule that one unpaid debt will not merit relief is that a single creditor may get relief if it can show that it has a special need for bankruptcy court relief and that state-law remedies would not be adequate . . . ." *In re Cent. Hobron Assocs.*, 41 B.R. 444, 448, 449 (D. Haw. 1984) ("The general rule appears to be that if there is but a single debt that a debtor is not paying then the case should be dismissed.").[1]

Here, Petitioner's debt is a simple judgment and not a debt with payments that are being missed as they become due. As a result, Petitioner cannot demonstrate that Alleged Debtor is somehow generally not paying its debts as they become due such that this case was properly initiated. This is fatal to Petitioner's Involuntary Petition.

Moreover, this case does not present any of the exceptional circumstances justifying the extreme relief of an involuntary bankruptcy for the benefit of one petitioning creditor. In fact,

---

[1] Courts agree that nonpayment of a single creditor will not sustain an involuntary petition other than in exceptional circumstances. *See, e.g., Bos. Beverage Corp. v. Turner*, 81 B.R. 738, 749 (D. Mass. 1987) ("In fact, a debtor's failure to pay one debt will not usually justify finding that the debtor is generally not paying his or her debts."); *Paroline v. Doling*, 116 B.R. 583, 585 (Bankr. S.D. Ohio 1990) ("[P]etitioning creditor, here, must demonstrate that he falls within one of the two exceptions to the general rule, above, before the court will enter an order for relief."); *In re Gold Bond Corp.*, 98 B.R. 128, 129 (Bankr. D.R.I. 1989) ("This burden is particularly difficult where there is only one creditor involved . . . ."); *In re Goldsmith*, 30 B.R. 956, 963 (Bankr. E.D.N.Y. 1983) ("I support the hesitancy of courts to find that an alleged debtor is 'generally not paying' its debts where there are only debts which are subject to a good faith dispute or where there is only one debt, even if it is a large one.").

the only thing exceptional about the Alleged Debtor's current financial affairs are their simplicity—the Alleged Debtor holds one asset (accounts receivable) and has one creditor (Petitioner). Just as in the State Court Case, Petitioner needlessly escalated what should have been very simple collection proceedings into an overbearing legal ordeal.

This case is the definition of a two-party dispute, and as the Alleged Debtor's sole creditor, Petitioner cannot show the required exceptional circumstances demonstrating that it would otherwise be without an adequate remedy. Rather than attempting to improperly use this Court as a collection mechanism, the Petitioner has all of the normal collection methods available to it in State Court. Alleged Debtor expects Petitioner to assert that it cannot effectively collect the Alleged Debtor's accounts receivable due to the State Court's imposed limitations on disclosure of Alleged Debtor's former clients' identities. The reality is that Petitioner has not even tried other potentially available collection methods, including seeking appointment of a receiver, or allowing Alleged Debtor to collect the accounts receivable for turnover to Petitioner. The Court should not allow Petitioner to abuse the bankruptcy process by using federal resources purely to collect on its Judgment against Alleged Debtor.

### B. **Involuntary Case was Filed in Bad Faith**

Courts have recognized the ability to dismiss an involuntary case on the basis of bad faith. *See, e.g., In re Forever Green Ath. Fields, Inc.*, 804 F.3d 328, 335 (3d Cir. 2015). "[T]he policy of discouraging bad faith filings is paramount." *In re Centennial Ins. Assocs., Inc.*, 119 B.R. 543, 547 (Bankr. W.D. Mich. 1990). "[B]ad faith analysis in the context of a pending involuntary petition under § 303 necessarily looks to the propriety of the petitioning party(s) . . . ." *In re WLB-RSK Venture*, 296 B.R. 509, 514 (Bankr. C.D. Cal. 2003).

### i. **Petitioner's Attempt to Use the Bankruptcy Court as a Collection Agency**

Courts recognize "bad faith" where a creditor uses "the Bankruptcy Code as 'a substitute for customary collection procedures.'" *In re Wavelength, Inc.*, 61 B.R. 614, 619 (B.A.P. 9th Cir. 1986) (quotations omitted). "[T]he bankruptcy court is not a collection agency." *In re Mountain Dairies, Inc.*, 372 B.R. 623, 635 (Bankr. S.D.N.Y. 2007). *See also In re Century Tile*

*and Marble, Inc.*, 152 B.R. 688, 689-90 (Bankr. S.D. Fla. 1993) (creditors' attorney sanctioned and involuntary petition dismissed pursuant to 11 U.S.C. § 303 for "utilizing bankruptcy court as a collection agency instead of going to state court where collection claims are properly filed").

Here, the Bankruptcy Court would serve a singular function: collection on account of Petitioner's judgment against the Alleged Debtor, nothing more. Alleged Debtor has no ongoing operations that require winding up. And, Alleged Debtor has no assets beyond its accounts receivable. Petitioner already has its judgment for which it can collect, and it does not even face additional creditors with competing claims that would require preservation of estate assets and a statutory distribution scheme. In this case, a bankruptcy would not provide any of these fundamental tools to Petitioner. Instead, a bankruptcy trustee would be improperly appointed solely as a collection agent for Petitioner. Petitioner should be required to pursue its own collection remedies in State Court—not choose a different venue and deputize a bankruptcy trustee to do its collection work.

### ii.     Petitioner's Use of the Bankruptcy Court for Malicious Purpose

Another view of bad faith considers whether "the petition is motivated by ill will, a sense of malice, or to embarrass or harass the debtor." *In re Johnston Hawks, Ltd.*, 72 B.R. 361, 366 (Bankr. D. Haw. 1987); *see also In re Wavelength, Inc.*, 61 B.R. at 620 (B.A.P. 9th Cir. 1986) ("Courts have employed a more expansive definition of bad faith to include ill will or malice toward the debtor or its owners."). "The determination should be measured by what a reasonable person would have believed." *In re Grecian Heights Owners' Asso.*, 27 B.R. 172, 173-74 (Bankr. D. Or. 1982). ("The damage to a debtor from the filing of an unfounded involuntary petition is the same whether it is filed by a reasonable person acting in bad faith or by one who is so unreasonable that he proceeds in disregard of competent advice that his proposed course of action is without merit.") As part of this inquiry, courts additionally will look at whether a petition is the result of a "forum shopping litigation tactic." *In re WLB-RSK Venture*, 296 B.R. 509, 514 (Bankr. C.D. Cal. 2003) (finding bad faith where creditor "employed his involuntary petition to circumvent his lack of success . . . in prior litigation in

other courts"). Use of an involuntary petition to gain improper leverage in settlement negotiations serves as an additional indica of bad faith. *See, e.g.*, *In re Grossinger*, 268 B.R. 386, 388 (Bankr. S.D.N.Y. 2001). Overall, the principal purpose of bankruptcy remains to grant a fresh start to the honest, but unfortunate debtor. *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367 (2007). Courts consider forcing a party into an involuntary party to be an "extreme remedy." *See, e.g.*, *In re Reid*, 773 F.2d 945, 946 (7th Cir. 1985)

Petitioner initiating this case merely continues its trend of "unreasonable" and "overzealous" litigation tactics, described in detail in the Fee Ruling. After being chastised by the State Court for its behavior in pursuing Alleged Debtor, Petitioner now seeks another venue through which to drag Alleged Debtor. Forcing a law firm with one creditor and no ongoing operations into an involuntary bankruptcy proceeding for judgment collection purposes is far beyond the scope of reasonable creditor action. In fact, the value of the accounts receivable will undoubtedly decline in a bankruptcy case versus the Alleged Debtors' principals continuing to work with the Alleged Debtors' clients to collect the accounts receivable.

Alleged Debtor operated a well-respected law firm and its principals continue to conduct successful legal practices in this District. Instead of pursuing its state court remedies (including attempting to appoint a receiver), Petitioner chose unnecessarily to subject the Alleged Debtor and its principals to an involuntary bankruptcy proceeding and the negative associations that come with such a filing. Presumably, this case was initiated in an attempt to enhance settlement leverage against the Alleged Debtors' principals who are not guarantors under the Lease and are not liable under the Judgment. This case serves no legitimate bankruptcy purpose and should be dismissed.

## C.    Dismissal under the Court's Discretion to Abstain

Even if the Involuntary Petition was properly filed, the Court should dismiss this case under the doctrine of abstention because all parties are better served by dismissal. "[N]otwithstanding a bankruptcy court's jurisdiction over an involuntary case pursuant to § 303, § 305(a) provides that the bankruptcy court may dismiss an involuntary case, or suspend all proceedings in that case, and thereby decline to exercise that jurisdiction." *Wechsler v. Macke*

*Int'l Trade, Inc. (In re Macke Int'l Trade, Inc.)*, 370 B.R. 236, 246 (B.A.P. 9th Cir. 2007).

"[T]he test is whether both the debtor and the creditors would be "better served" by a dismissal." *Eastman v. Eastman (In re Eastman)*, 188 B.R. 621, 625 (B.A.P. 9th Cir. 1995). Courts all should consider the "motivation of the petitioners" and "the detriment of the bankruptcy proceeding to the debtor." *In re Tarletz*, 27 B.R. 787, 793 (Bankr. D. Colo. 1983). In applying this test, courts consider the following factors:

> (1) the economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.

*Marciano v. Fahs (In re Marciano)*, 459 B.R. 27, 46-47 (B.A.P. 9th Cir. 2011) (quoting *In re Monitor Single Lift I, Ltd.*, 381 B.R 455, 464-65 (Bankr. S.D.N.Y. 2008)). While all factors are considered, not all are given equal weight in every case. *See Monitor Single Lift I*, 381 B.R. at 464-65.

### i. The economy and efficiency of administration

Bringing this matter into the Bankruptcy Court would only add an additional layer of expense to the resolution of this matter. Alleged Debtor simply needs to collect its receivable and turn over the proceeds to Petitioner, which it has offered to do outside of bankruptcy. None of the costs that will be incurred here are necessary, since there is no legitimate bankruptcy purpose to be served by this filing. Therefore, economy and efficiency favor dismissal.

### ii. The availability of another forum, or the actual pendency of an insolvency proceeding in one

Upon application, an Arizona judge may appoint a receiver "to protect and preserve property or the rights of parties therein." A.R.S. § 12-1241. "The statute simply requires the trial court to determine that the property or the rights of the parties need protection." *Gravel Res. Of Ariz. v. Hills*, 170 P.3d 282, 286 (Ariz. Ct. App. 2007) (rejecting requirements for

irreparable harm or lack of adequate legal remedy). "The appointment of a receiver rests in the sound legal discretion of the trial court." *D & S Farms v. Producers Cotton Oil Co.*, 492 P.2d 429, 431 (1972).

Petitioner has adequate potential remedies under existing state law. If it will not accept Alleged Debtor collecting accounts receivable for turnover, Petitioner could attempt to collect against Alleged Debtor as it converts accounts receivable to cash proceeds, as it has already done. While Alleged Debtor would undoubtedly generate a greater return for Petitioner if allowed to collect the accounts receivable and turn them over, Petitioner could seek appointment of a receiver to hold collected funds. Ultimately, the State Court is available to protect the interest of both parties without the need for a federal bankruptcy forum. The availability and pendency of State Court actions favor dismissal.

> ### iii. Whether federal proceedings are necessary to reach a just and equitable resolution

As discussed, this bankruptcy proceeding provides no proper benefit and equity favors dismissal.

> ### iv. The availability of alternative means for an equitable distribution of assets and value

Alleged Debtor has only one asset (accounts receivable), Petitioner faces no impediment from other creditors, and the bankruptcy distribution scheme serves no purpose here. The sheer lack of need for a bankruptcy process to administer and distribute Alleged Debtor's assets favors dismissal.

> ### v. Whether the alleged debtor and creditors are able to work out a less expensive out- of-court arrangement that better serves all interests in the case

Allowing Alleged Debtor to collect accounts receivable from its clients using its existing relationships maximizes the value of the Alleged Debtor's receivables. This creates a greater pool from which Petitioner can collect. Dismissing this case creates a significantly better chance for the parties to reach an agreement that maximizes the benefit to all parties.

**vi.** **Whether a non-federal insolvency proceeding has progressed so far that it would be costly and time consuming to start afresh with the federal bankruptcy process**

Currently there is not a non-federal insolvency proceeding pending.

**vii.** **The purpose for which bankruptcy was sought by the petitioners.**

Petitioner has no legitimate purpose for this bankruptcy proceeding. Petitioner seemingly initiated this case to shop for a more advantageous venue to collect on its Judgment, and this heavily favors dismissal.

**D.** **FEES, COSTS, AND DAMAGES AWARD UNDER SECTION 303(i)**

With Petitioner having wrongfully initiating this involuntary bankruptcy case, Alleged Debtor should receive an award of its attorneys' fees and costs.

Section 303(i) provides:

> If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment (1) against the petitioners and in favor of the debtor for (A) costs; or (B) a reasonable attorney's fee; or (2) against any petitioner that filed the petition in bad faith, for (A) damages proximately caused by such filing; or (B) punitive damages.

11 U.S.C. § 303(i). "[T]he statutory scheme allows, and indeed preempts other causes of action for, relief against those who inappropriately invoke the involuntary bankruptcy process, whether the petition is dismissed under § 303 or via § 305(a)(1)." *Wechsler v. Macke Int'l Trade, Inc. (In re Macke Int'l Trade, Inc.)*, 370 B.R. 236, 248 (B.A.P. 9th Cir. 2007). "[A]n involuntary debtor's motion for attorney's fees and costs under § 303(i)(1) raises a rebuttable presumption that reasonable fees and costs are authorized." *Higgins v. Vortex Fishing Sys. (In re Vortex Fishing Sys.)*, 379 F.3d 701, 707 (9th Cir. 2004). "The burden was on [the petitioning creditor] to rebut the presumption by establishing that fees and costs were unwarranted under the totality of circumstances." *Sofris v. Maple-Whitworth, Inc. (In re Maple-Whitworth, Inc.)*, 556 F.3d 742, 746 (9th Cir. 2009). "In deciding whether to award fees, a court considers the 'totality of the circumstances,' including '1) the merits of the involuntary petition, 2) the role of any improper conduct on the part of the alleged debtor, 3) the reasonableness of the actions taken by

the petitioning creditors, and 4) the motivation and objectives behind filing the petition.'" *Orange Blossom Ltd. P'ship v. S. Cal. Sunbelt Developers, Inc. (In re S. Cal. Sunbelt Developers, Inc.)*, 608 F.3d 456, 462 (9th Cir. 2010) (quotations omitted).

Petitioner has dragged Alleged Debtor through years of unnecessary and overzealous litigation, and this involuntary case is simply a continuation on that destructive path. For the reasons discussed at length herein, the Court should dismiss this case, and upon doing so, issue an award to Alleged Debtor for having to defend itself in this proceeding from this improper filing. The Court has an interest in discouraging judgment creditors—especially in a two-party dispute—from forcing judgment debtors into involuntary bankruptcy proceedings when the judgment creditor deems it a more convenient venue for its collection purposes. Accordingly, the Court should enter a compensatory and punitive award against Petitioner and in favor of Alleged Debtor.

## E. **PETITIONER SHOULD POST A BOND PENDING RESOLUTION**

Petitioner should be required to post a bond pursuant to § 303(e) in the amount of at least $250,000. A court may impose a bond upon prima facie showing of bad faith. *See In re Ransome Grp. Inv'rs I, LP*, 423 B.R. 556, 558 (Bankr. M.D. Fla. 2009). "A bond can have a sobering effect in a case that is off to a shaky start and that is fraught with controversy about the bona fides of the petitioners." *In re Kidwell*, 158 B.R. 203, 218 (Bankr. E.D. Cal. 1993).

For the many reasons discussed herein, Alleged Debtor anticipates that this case should be expeditiously dismissed, for among many other reasons, bad faith. Yet, if there are further proceedings, Petitioner should be required to post a bond of at least $250,000 to secure Alleged Debtor's recovery under § 303(i), including attorneys' fees and costs. Alleged Debtor should not be left without recovery of the damages that it incurs in this case.

WHEREFORE, Alleged Debtor respectfully requests that the Court enter an order as follows:

1. Dismissing the Involuntary Petition and this case with prejudice;

2. Awarding Alleged Debtor its attorneys' fees and costs incurred in this matter;

3. Awarding damages, including punitive damages, in an amount to be determined by

the Court;

4.  Requiring Petitioner to post a bond in the amount of $250,000 pursuant to 11 U.S.C. § 303(e) pending resolution of this matter; and

5.  Granting such other and further relief as the Court deems proper.

DATED:  December 4, 2019.

**ALLEN BARNES & JONES, PLC**

_/s/ MAJ #27311_
Michael A. Jones
Cody D. Vandewerker
David B. Nelson
1850 N. Central Ave. Suite 1150
Phoenix, Arizona 85004
Attorneys for Nussbaum, Gillis & Dinner, P.C.,
Alleged Debtor

**E-FILED** on December 4, 2019 with the
U.S. Bankruptcy Court and copies served
via ECF notice on all parties that have
appeared in the case.

**COPY** mailed the same date via U.S. Mail to:

Office of the U.S. Trustee
230 N. First Avenue, Suite 204
Phoenix, AZ  85003-1706

**COPY** e-mailed the same date to:

Isaac M. Gabriel
QUARLES & BRADY LLP
2 N. Central Avenue
Phoenix, AZ 85004-2391
isaac.gabriel@quarles.com
_Attorneys for Scottsdale-Kierland IV, LLC,_
_Petitioning Creditor_

_/s/ Stephanie Sheffield_

# Exhibit A

Clerk of the Superior Court
*** Electronically Filed ***
N. Johnson, Deputy
6/27/2019 8:00:00 AM
Filing ID 10597758

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| SCOTTSDALE-KIERLAND IV, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>NUSSBAUM GILLIS & DINNER P.C., an Arizona professional corporation,<br><br>Defendant. | CASE NO.  CV2017-012245<br><br>**FINAL JUDGMENT** |

Plaintiff Scottsdale-Kierland IV, LLC having filed this action against Defendant Nussbaum Gillis & Dinner P.C. on September 6, 2017;

The matter having proceeded to trial on April 2 and 3, 2019 before the Honorable Timothy J. Thomason;

The Court having found in a minute entry filed on May 15, 2019 that Plaintiff is entitled to $1,446,960.40 in damages;

The Court having found in a minute entry filed on May 30, 2019 that Plaintiff is

entitled to prejudgment interest in the amounts of $101,922.18 for the thirteen months of unpaid rent through April 30, 2019, $107,086.79 for the abated office rent through May 1, 2019, and $5,059.72 for the abated parking rent through May 1, 2019; and

The Court having found in a minute entry filed on June 14, 2019 that Plaintiff is entitled to an award of attorneys' fees in the amount of $100,000.00 and expenses in the amount of $8,248.81;

**IT IS HEREBY ORDERED** that final judgment is entered in favor of Plaintiff Scottsdale-Kierland IV, LLC and against Defendant Nussbaum Gillis & Dinner P.C. in the amount of $1,769,277.90;

**IT IS FURTHER ORDERED** that this Judgment shall accrue interest at the contract rate of 18% per annum until paid in full; and,

**IT IS FURTHER ORDERED** that no further matters remain pending and this Judgment is entered under Arizona Rule of Civil Procedure 54(c).

DONE IN OPEN COURT this ____ day of _____, 2019.


_____
Honorable Timothy J. Thomason

QB\166046.00002\58030581.1

- 3 -

Filing ID: 10597758   Case Number: CV2017-012245
Original Filing ID: 10574011

**Granted as Submitted**

/S/ Timothy Thomason Date: 6/26/2019
Judicial Officer of Superior Court

CASE NUMBER: CV2017-012245

SIGNATURE DATE: 6/26/2019

E-FILING ID #: 10597758

FILED DATE: 6/27/2019 8:00:00 AM

COREE ELIZABETH NEUMEYER

JOHN M O'NEAL

LINDSEY M GOMEZ-GRAY

RODNEY W OTT

STEPHEN M DICHTER

# Exhibit B

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2017-012245                                              06/13/2019

CLERK OF THE COURT
HONORABLE TIMOTHY J. THOMASON                      N. Johnson
Deputy

SCOTTSDALE-KIERLAND I V, L L C          JOHN M O'NEAL

v.

NUSSBAUM GILLIS & DINNER P C            LINDSEY M GOMEZ-GRAY


RODNEY W OTT
COREE ELIZABETH NEUMEYER
STEPHEN M DICHTER
JUDGE THOMASON


**RULING**


Plaintiff has already been granted an award of fees. The only issue is the amount. The Court has considered the Fee Application and the Response, along with the supporting materials.

There are two competing concerns here. First, the Tenant breached the Lease. Its exposure on the Lease was very high. The position taken by the Tenant in this case had little merit. Tenant clearly caused a large amount of unnecessary fees to be incurred.

The other competing concern, however, is the amount of fees requested by plaintiff. $562,000 is simply a patently unreasonable amount. It bears absolutely no relationship to what it reasonably took to successfully complete this case. It is literally multiples of what was reasonable.[1]

---

[1] The Court was perplexed why plaintiff pursued this case at all, given that the defendant was a professional corporation and plaintiff did not secure personal guarantees. The Court considered that perhaps the parties were "fighting" over receivables. The Response makes it evident that that was not the case. As such, the Court is still perplexed why plaintiff pursued this case at all. Nonetheless, the Court's ruling on fees is based solely on what the Court finds to be a reasonable fee in pursuing this case, irrespective of the wisdom of pursuing the case at all.

CV 2017-012245                                                    06/13/2019

This was a simple case. Very simple. As defendant stated in the Response, "(t)his was a straightforward commercial lease dispute in which the defense, without prompting or equivocation, conceded liability."

The Tenant breached the Lease. There was never a dispute about that. Yet, plaintiff spent substantial time filing a Motion on liability—a Motion that was totally unnecessary.

The only real issue to litigate was reasonable mitigation. The Landlord had the benefit of being able to call its own broker. This was essentially a two witness case for plaintiff. There was nothing complicated about this case at all. It was about as straight forward a case as you can possibly have. Yet, this case was litigated like a complex commercial dispute, with extensive discovery and complicated legal issues. This case was not complex, it did not involve extensive discovery and had no complicated legal issues. The effort that apparently went into this case had no relationship whatsoever to what was reasonably necessary to accomplish the requisite goals.

While the plaintiff complains about defendant's aggressive litigation strategy, that argument only goes so far. Plaintiff was clearly a willing participant in overzealous approach to this case. There was no need at all for multiple depositions. Indeed, the only depositions that were really necessary were defendants' expert and perhaps Mr. Nussbaum.[2] There was absolutely no need to depose other potential witnesses. For example, Mr. Dinner and Mr. Gillis clearly had nothing to add to this case and there was absolutely no need to depose them.

There was no need for voluminous written discovery. There was no need for extensive legal research, or really any research at all. The relevant law is very simple and understood by all, including the Court.

The fact that the damages were high is certainly relevant, but ultimately beside the point. The issues presented here were no more complex than they would have been if the damages were far more modest. Again, the only real issue in this case was reasonable mitigation. All plaintiff had to do was put on the broker and property manager to talk about what they tried to do to lease the premises. It is hard to imagine a case more simple than this one. How plaintiff managed to rack up over $550,000 in fees is a complete mystery.

The Court has looked over the fee affidavit. Even a brief review shows multiple unreasonable time entries and unnecessary tasks. First of all, the client got billed for the spent on a conflicts check. From August 15 to August 18, Mr. Ott racked up almost $10,000 in fees doing preliminary things on this case. Indeed, he spent three hours drafting a memo on "strategy." There

---

[2] Mr. Nussbaum's deposition should have been simple—yet a miraculous 35 hours in attorney time was spent preparing for that deposition.

was not a lot of "strategy" that had to go into this case. It looks like almost fifteen hours were devoted to the Complaint, an incredibly simple and basic document that could have been drafted in an hour. Hours and hours were billed for research. There was no need for this. Over twenty hours was spent on the first motion for summary judgment, that was completely unnecessary. Literally dozens of hours were spent producing documents. Time was spent preparing subpoenas and notices of deposition that were completely unnecessary. As noted above, a staggering amount of time was spent preparing for Mr. Nussbaum's deposition. Over twenty five hours was spent on a motion to exclude the expert Cross. This Motion had virtually no chance of success and was completely unnecessary for a bench trial. Then a second motion for summary judgment was prepared. Approximately forty hours was spent on this motion. This was a complete waste of money. This motion had no chance of success. Reasonable mitigation was clearly an issue of fact. Almost two hundred hours of time preparing for trial and for trial itself was patently excessive. Of course, it was completely unnecessary for two lawyers to attend trial. The time entries just go on and on.

No attempt was made to manage the time spent on this case. No effort was engaged in to ascertain what was reasonably necessary and what time was reasonably required to complete the necessary tasks. The harsh reality here is that the time spent on this case bore no relationship to what was reasonable or necessary.

This Court has had multiple cases like this and has had at least three go to trial. The Court knows what it takes to complete a case like this one. The Court has seen fee requests in other very similar cases. The fees expended and requested in other cases were not in the universe of what is requested here.

Discovery for a case like this should have been simple and straightforward. The trial of this case should have been simple and painless. The Court was perfectly capable of deciding the issues based on the evidence presented at trial.

Before the Response was filed, the Court had determined that $100,000 was the high end of a reasonable fee for this case. The Response suggests somewhere in the range of $100,000 was reasonable. The Court agrees. Plaintiff is awarded $100,000 in fees. Frankly, this case should have been resolved for far less than even $100,000. In fact, the Court just awarded a landlord fees of less than $40,000 on a case very similar to this case. $8,248.81 in expenses are awarded.

# Exhibit C

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2017-012245                                                      08/09/2019


                                                  CLERK OF THE COURT
HONORABLE DAVID W. GARBARINO                              L. Brown
                                                          Deputy



SCOTTSDALE-KIERLAND I V, L L C              JOHN M O'NEAL

v.

NUSSBAUM GILLIS & DINNER P C                LINDSEY M GOMEZ-GRAY



                                            COMM. GARBARINO


                              MINUTE ENTRY

        Courtroom: ECB 813.

        2:04 p.m.  This is the time set for a Telephonic Hearing regarding Plaintiff's Joint
Statement of Discovery Dispute Under A.R.C.P. 26(d).  Plaintiff, Scottsdale Kierland IV, LLC,
is represented telephonically by counsel, Rodney Ott.  Defendant, Nussbaum Gillis & Dinner
PC, is represented telephonically by counsel, Stephen Dichter.  No other parties are present.

        A record of the proceedings is made digitally in lieu of a court reporter.

        Discussion is held.

        The Court concludes that Ariz. R. Sup. Ct. 42, E.R. 1.6(a) protects all "information
relating to the representation of a client," including the identity of a client, and that the Court has
no authority in this case to issue an order that would compel production of client information
under E.R. 1.6(d)(5).  Accordingly,

CV 2017-012245                                                08/09/2019


      IT IS ORDERED that Defendant Nussbaum Gillis & Dinner, P.C. may redact "information relating to the representation of a client" from the documents to be produced to Plaintiff Scottsdale-Kierland IV, LLC, and specifically may redact information that would reveal the identity of the client and information that would reveal the nature of the work performed on behalf of a client.


      2:30 p.m.  Matter concludes.

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

CV 2017-012245                                        09/06/2019


|                                          | CLERK OF THE COURT |
| HONORABLE DAVID W. GARBARINO             | L. Brown           |
|                                          | Deputy             |


SCOTTSDALE-KIERLAND I V, L L C              JOHN M O'NEAL

v.

NUSSBAUM GILLIS & DINNER P C               LINDSEY M GOMEZ-GRAY


COMM. GARBARINO


### MINUTE ENTRY


The Court received and reviewed Plaintiff Scottsdale Kierland IV, LLC's Motion to Reconsider Ruling on Contact Information for Defendant's Accounts Receivable. The Court appreciates the tension between a judgment creditor's right to know the information sought and the Ethical Rules. ER 1.6(a) states "[a] lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted or required by paragraphs (b), (c) or (d)." Information such as a client's name and balance owed to his/her/its attorneys is information that relates to his/her/its representation. None of the exceptions apply in this case. Furthermore, the right to confidentiality rests with the client, not the lawyer. The Court will not invade that relationship at the request of a creditor of the lawyer.

IT IS ORDERED denying Plaintiff Scottsdale Kierland IV, LLC's Motion to Reconsider Ruling on Contact Information for Defendant's Accounts Receivable.